UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| WILLIAM M., § § §<br>Plaintiff, § §<br>v. §<br>§<br>COMMISSIONER OF SOCIAL SECURITY, §<br>§<br>Defendant. § | Case # 1:19-CV-1665-DB<br><br>MEMORANDUM DECISION<br>AND ORDER |

## INTRODUCTION

Plaintiff William M. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner") that denied his application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 14).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 7, 10. Plaintiff also filed a reply. *See* ECF No. 12. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 7) is **DENIED**, and the Commissioner's motion for judgment on the pleadings (ECF No. 10) is **GRANTED.**

## BACKGROUND

Plaintiff protectively filed his application for SSI on July 16, 2016, alleging disability beginning July 1, 2015 (the disability onset date), due to bipolar disorder, anxiety, attention deficit hyperactivity disorder ("ADHD"), a reading disability, depression, vision and hearing impairments, neck issues, and a torn left shoulder rotator cuff. Transcript ("Tr.") 370-87, 397. Plaintiff's claim was denied initially on November 8, 2016, after which he requested an

administrative hearing. Tr. 15, 304-18. On November 5, 2018, Administrative Law Judge Stephen Cordovani (the "ALJ") presided over a hearing in Buffalo, New York. *Id*. Plaintiff appeared and testified at the hearing and was represented by Kelly Laga, an attorney. *Id*. Jay Steinbrenner, an impartial vocational expert ("VE"), also appeared and testified at the hearing. *Id*.

The ALJ issued an unfavorable decision on December 5, 2018, finding that Plaintiff was not disabled. Tr. 15-29. On October 15, 2019, the Appeals Council denied Plaintiff's request for further review. Tr. 1-5. The ALJ's December 5, 2018 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## **LEGAL STANDARD**

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II. The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful

work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## **ADMINISTRATIVE LAW JUDGE'S FINDINGS**

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his December 5, 2018 decision:

1. The claimant has not engaged in substantial gainful activity since July 16, 2016, the application date (20 CFR 416.971 *et seq.*);

2. The claimant has the following severe impairments: sensorineural hearing loss in his left ear; vision loss in his left eye; bipolar disorder; attention deficit disorder ("ADD"); a learning disorder; generalized anxiety disorder with panic attacks; and a history of arthritis in his lower back (20 CFR 416.920(c));

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926);

4. The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b)[1] except he can occasionally climb ramps and stairs, kneel, crouch, and crawl. The claimant cannot climb ladders, ropes, or scaffolds. He cannot reach overhead. The claimant cannot work in loud noise. He cannot perform work that requires depth perception or work requiring left field of vision. He can occasionally perform work involving near acuity. The claimant is able to work in a low stress work environment reflected by simple, routine unskilled work with no supervisory duties, independent decision-making, or strict production quotas. He can perform work that has no more than minimal changes in work routine and processes. The claimant can have frequent interaction with supervisors and occasional interaction with co-workers and the general public. All work instruction must be provided orally or by demonstration;

5. The claimant has no past relevant work (20 CFR 416.965);

6. The claimant was born on October 24, 1979 and was 36 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963);

7. The claimant has a limited education and is able to communicate in English (20 CFR 416.964);

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968);

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a);

10. The claimant has not been under a disability, as defined in the Social Security Act, since July 16, 2016, the date the application was filed (20 CFR 416.920(1)).

Tr. 15-29.

Accordingly, the ALJ determined that, based on the application for supplemental security benefits filed on July 16, 2016, the claimant is not disabled under section 1614(a)(3)(A) of the Act. Tr. 29.

## ANALYSIS

Plaintiff asserts three points of error. First, Plaintiff argues that the ALJ's mental RFC finding is unsupported because he granted significant weight to the opinions of consulting psychiatric examiner Janine Ippolito, Psy.D. ("Dr. Ippolito"), and state agency review consultant Hillary Tzetzo, M.D. ("Dr. Tzetzo"), but did not explain why all of their opined limitations were not were not incorporated into the RFC. *See* ECF No. 7-1 at 10-13. Next, Plaintiff argues that the ALJ improperly gave great weight to the opinion of consulting internal medicine examiner Hongbiao Liu, M.D., ("Dr. Liu"), but the opinion was too vague, and it was inconsistent with the RFC for light work. *See id*. 13-15. Finally, Plaintiff argues that the Appeals Council erred in rejecting the evidence of Plaintiff's treatment at Horizon Health Services ("Horizon") from May 2016 through March 2017. *See id*. at 15-16.

The Commissioner responds that: (1) the ALJ's mental and physical RFC findings were supported by substantial evidence; and (2) the evidence submitted to the Appeals Council was properly addressed. *See* ECF No. 10-1 at 17-25.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v.*

*Chater*, 221 F.3d 126, 131 (2d Cir.2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review of the record in this case, the Court finds that the ALJ's analysis was thorough, and his RFC finding is supported by treatment and examination evidence, the medical opinion evidence, Plaintiff's conservative treatment, and his response to treatment, as well as his activities and testimony. The relevant treatment evidence in this case is relatively sparse and fails to support Plaintiff's claims of disability Furthermore, Plaintiff's activities demonstrate physical and mental abilities consistent with the ALJ's RFC finding.

Contrary to Plaintiff's argument, substantial evidence supports the ALJ's finding that Plaintiff retained the RFC to perform light exertional work with the additional physical and mental limitations noted. Tr. 22. A claimant's RFC is the most he can still do despite his limitations and is assessed based on an evaluation of all relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); SSR 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner). Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2) (indicating that "the final responsibility for deciding these issues [including RFC] is reserved to the Commissioner"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. Oct. 15, 2015), *report and*

*recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. Dec. 1, 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

Additionally, the burden to provide evidence to establish the RFC lies with Plaintiff—not the Commissioner. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a); *see also Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) ("The applicant bears the burden of proof in the first four steps of the sequential inquiry . . . ."); *Mitchell v. Colvin*, No. 14-CV-303S, 2015 WL 3970996, at *4 (W.D.N.Y. June 30, 2015) ("It is, however, Plaintiff's burden to prove his RFC."); *Poupore v. Astrue*, 566 F.3d 303, 305-06 (2d Cir. 2009) (The burden is on Plaintiff to show that she cannot perform the RFC as found by the ALJ.).

Plaintiff's challenges to the ALJ's RFC finding wrongly presume that RFCs are medical determinations and, thus, outside the ALJ's expertise. However, RFC is an administrative finding, not a medical one. The regulations explicitly state that the issue of RFC is "reserved to the Commissioner" because it is an "administrative finding[] that [is] dispositive of the case." 20 C.F.R. §§ 404.1527(d), 416.927(d). Moreover, the ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [his] decision," because the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) (the RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and synthesizes all evidence available to render an RFC finding consistent with the record as a whole); *Castle v. Colvin*, No. 1:15-CV-00113 (MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) (The fact that the ALJ's RFC assessment did not perfectly match a medical opinion is not grounds for remand.).

In support of the mental RFC finding, the ALJ properly considered treatment notes demonstrating intact attention, concentration, and memory, as well as Plaintiff's statements that he could follow oral instructions; and his reported activities reflected social functioning abilities. Tr. 19-20, 23-24, 26, 418. Treatment records describing Plaintiff as alert, oriented, pleasant, and cooperative further support the ALJ's finding. Tr. 504, 507-08, 519, 582, 626, 668, 675, 712-13, 736. On July 10, 2015, Plaintiff established care with Kenneth Osborn, PA ("Mr. Osborn") to complete disability paperwork. Tr. 510-13. Mr. Osborn stated that Plaintiff was stable, and medication helped him focus and concentrate "in an effective way." Tr. 500, 502, 506. In March 2016, Plaintiff was doing well with medication; he did not feel depressed; and his anxiety was adequately controlled. Tr. 498. In June 2016, Plaintiff had intact memory and attention. Tr. 582.

During an initial mental health assessment at Zoar Valley Clinic ("Zoar Valley") in March 2018, Plaintiff stated he was seeking service because his physician would not prescribe medication unless he participated in mental health screening. Tr. 665. Plaintiff was assessed by Rosemarie Dorn, LCSW-R ("Ms. Dorn"), who described Plaintiff as "casually dressed with poor hygiene," "superficially cooperative," and "irritable." Tr. 666. She also noted slightly below average intelligence. *Id*. His eye contact was poor; and he slouched in the chair throughout the session. *Id*. Plaintiff denied any audio or visual hallucinations; there was no delusional content; and no evidence of any psychosis. *Id*. Ms. Dorn also noted that Plaintiff "was focused on getting prescriptions." *Id*.

Plaintiff reported receiving mental health treatment in the past, but he could not provide many details, and he was unable to identify any past diagnosis. Tr. 666. Plaintiff indicated that his primary care physician prescribed Adderall 30 mg once daily and Xanax 1 mg once daily, but Plaintiff believed he needed more of both medications. *Id*. Ms. Dorn noted that Plaintiff had a

previous episode of care at Zoar Valley, but he was not admitted because he was "determined to not have a mental health diagnosis." *Id*. Psychiatrist John McAlevey, D.O. ("Dr. McAlevey"), assessed generally intact insight and judgment and good impulse control. Tr. 675.

During his second visit, Plaintiff was pleasant, cooperative, and casually dressed with "fair" hygiene, no psychomotor agitation or retardation, fair eye contact, and dysphoric affect. Tr. 668. Plaintiff seemed more spontaneous; he had; he had normal speech rate, volume, and flow; and his thought processes were organized. *Id*. He was focused on getting prescriptions and social security disability. *Id*. Subsequent notes also describe Plaintiff as casually dressed and groomed, pleasant, calm, and focused with generally euthymic and appropriate affect, no evidence of hypomania or psychosis, and slightly below average intelligence. Tr. 675, 712-13, 736. Additional progress notes in March 30, 2018 and April 6, 2018 show good attention, good mood, euthymic affect, normal speech, and organized thought process. Tr. 712, 721. Plaintiff reported his mood was better because the weather was nicer, and he was able to get out more, including going fishing with friends. Tr. 712. He also remained focused on getting social security disability. *Id*. The foregoing treatment and examination evidence provides support for the ALJ's mental RFC finding.

The ALJ also properly considered Plaintiff's activities of daily living. Tr. 19-20, 26. *See* 20 C.F.R. § 404.1529(c)(3)(i) (An ALJ may consider the nature of a claimant's daily activities in evaluating the consistency of allegations of disability with the record as a whole.); *see also Ewing v. Comm'r of Soc. Sec.*, No. 17-CV-68S, 2018 WL 6060484, at *5 (W.D.N.Y. Nov. 20, 2018) ("Indeed, the Commissioner's regulations expressly identify 'daily activities' as a factor the ALJ should consider in evaluating the intensity and persistence of a claimant's symptoms.") (citing 20 C.F.R. § 416.929(c)(3)(i)); *Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (claimant's abilities to watch television, read, drive, and do household chores supported ALJ's finding that his

testimony was not fully credible). The record shows that Plaintiff attended AA meetings several times weekly, went fishing with friends, went out to restaurants, went shopping, attended concerts and local festivals, and extensively utilized social media. Tr. 62-63, 66, 72-73, 76, 413, 415, 625, 627, 631, 712, 721. Plaintiff also testified that, although he tried not to interact with people he did not know, he could do so without issues. Tr. 60-61. Considered in combination with the other evidence of record, Plaintiff's activities reflect abilities consistent with the ability to socialize within the RFC limitations assessed by the ALJ.

In addition to the treatment and examination findings and Plaintiff's reported activities, the ALJ considered Dr. Ippolito's opinion. Tr. 22. Dr. Ippolito examined Plaintiff on October 18, 2016. Tr. 624-28. Plaintiff stated that he was fired from his construction job due to learning problems, and he could not work due to chronic pain in his neck, shoulder, arm, and back. Tr. 624. Plaintiff stated that he last used alcohol three years before, and he attended alcoholics anonymous ("AA") and narcotics anonymous ("NA") meetings three times weekly. Tr. 625. During examination, Plaintiff was cooperative with adequate manner of relating, social skills, and overall presentation. Tr. 626. He was alert, oriented, and casually dressed with adequate hygiene and grooming, somewhat lethargic motor behavior, slouched posture, and appropriate eye contact; and he had fluent speech, clear voice, adequate expressive and receptive language, and coherent thought processes with no evidence of hallucinations, delusions, or paranoia. *Id*. Dr. Ippolito noted dysphoric affect, dysthymic mood, and clear sensorium. *Id*. Plaintiff had below average estimated intellectual functioning; he could count and perform simple addition, but he could not subtract, and he recalled three out of three objects immediately and two out of three objects after a delay. Tr. 626-27. Plaintiff stated he could cook, clean, go grocery shopping, tend to his personal hygiene

and dress, and manage his money. Tr. 627. He socialized with his girlfriend and his mother, watched television, and enjoyed fishing. *Id*.

Dr. Ippolito opined that Plaintiff had no limitations in following and understanding simple directions and instructions, performing simple and complex tasks independently, maintaining a regular schedule, and making appropriate decisions; he had mild limitations maintaining attention and concentration and learning new tasks; and moderate limitations adequately relating with others and dealing appropriately with stress. Tr. 627. Dr. Ippolito further opined that Plaintiff did not have psychiatric or substance abuse problems significant enough to interfere with his ability to function on a daily basis. *Id*.

The ALJ properly granted Dr. Ippolito's opinion significant weight because it was consistent with the overall treatment record, other opinion evidence, and Plaintiff's activities. Tr. 26. *See Wilkins v. Comm'r of Soc. Sec.*, No. 1:18-CV-00067, 2019 WL 2500500, at *6 (W.D.N.Y. June 17, 2019). See 20 C.F.R. § 416.913a(b)(1) and 416.927(e) ("It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability."). Furthermore, Dr. Ippolito's opinion is consistent with the ALJ's limitation to simple and routine unskilled work in a low-stress environment with no supervisory duties, independent decision-making, or strict production quotas; no more than minimal changes in work routine and processes; frequent interaction with supervisors and occasional interaction with coworkers and the general public; and all work instruction must be provided orally or by demonstration.

The ALJ also granted significant weight to state agency psychiatric consultant Dr. Tzetzo's opinion (Tr. 26-27); however, the ALJ was not required to adopt the opinion wholesale, as Plaintiff appears to argue. *See* ECF No. 7-1 at 12-13. Dr. Tzetzo opined that Plaintiff could perform simple,

routine, and repetitive work involving mainly brief and superficial contacts with supervisors, coworkers, and the public. Tr. 293. Dr. Tzetzo further opined that Plaintiff had generally moderate social interaction limitations and marked limitations with the general public. Tr. 299. Plaintiff alleges that the ALJ's restriction to "low stress" failed to discuss the individualized nature of stress. *See* ECF No. 7-1 at 10-11. "Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job." SSR 85-15. "Any impairment-related limitations created by an individual's response to demands of work, however, must be reflected in the RFC assessment." *Id*. This is exactly what the ALJ did here in formulating the RFC.

Notably, there was little mention of stress in Plaintiff's mental health treatment records other than conflicts with his girlfriend due to Plaintiff'ls "difficulty having his emotional needs met" and "needing space [without] her." Tr. 254. Deficits in mental health brought upon by situational stress are not necessarily disabling. *See Swiantek v. Comm'r of Soc. Sec.*, 588 F. App'x 82, 83-84 (2d Cir. 2015); *Morgan v. Colvin*, No. 6:14-cv-0549 (LEK), 2016 WL 3527907, at *15 (N.D.N.Y. June 23, 2016) (situational stressors are not a basis for a finding of disability). The Court finds that the ALJ's RFC assessment properly accounted for any limitations Plaintiff had in dealing with stress. The ALJ restricted Plaintiff from supervisory duties and limited him to frequent interaction with supervisors and occasional interaction with coworkers and the general public. Tr. 22. The ALJ's decision shows consideration of Plaintiff's activities reflecting social skills, his generally pleasant and cooperative nature during examinations, and his participation in group meetings and social activities. As noted above, Plaintiff also testified that, although he tried not to interact with people he did not know, he could do it without issues. Tr. 60-61. Contrary to

Plaintiff's claim, the ALJ provided adequate explanation and citation to supporting evidence for his RFC finding.

Plaintiff also challenges the ALJ's physical RFC finding, arguing that the ALJ gave great weight to Dr. Liu's opinion, but the opinion was too vague, and it was inconsistent with light work. *See* ECF No. 7-1 at 13-15. Upon consideration of the evidence, the ALJ found that Plaintiff maintained the physical RFC to perform light work as defined in the regulations, except that he could occasionally climb ramps and stairs, kneel, crouch, and crawl; but never climb ladders, ropes, or scaffolds or reach overhead. Tr. 21-22. The Commissioner's regulations state that light exertional work involves lifting 10 pounds frequently and 20 pounds maximum, a good deal of walking or standing, or when the job involves primarily sitting, pushing and pulling or arm or leg controls is involved. *See* 20 C.F.R. § 416.967(b).

Plaintiff advised Dr. Liu that he could lift 10 pounds and walk one block. Tr. 630. Upon examination, Plaintiff had normal gait and stance; he did not use an assistive device; and he needed no help changing, maneuvering the examination table, or rising from a chair. Tr. 631. He had normal strength, no muscle atrophy, and intact grip and dexterity. Tr. 632-33. Dr. Liu opined that Plaintiff had moderate limitations with lifting, carrying, and overhead reaching; and mild to moderate limitations with prolonged walking, bending, kneeling, and activities involving visual acuity. Tr. 633. Moderate exertional limitations are generally consistent with light exertion. *See, e.g.*, *Grega v. Berryhill*, No. 17-CV-6596, 2019 WL 2610793, at *10 (W.D.N.Y. June 26, 2019) (light work not inconsistent with moderate exertional limitations); *Burch v. Comm'r of Soc. Sec.*, No. 17-CV-1252, 2019 WL 922912, at *4 (W.D.N.Y. Feb. 26, 2019) (RFC for light work supported by moderate limitations for exertional activities and other substantial evidence in the record); *April B. v. Saul*, 2019 WL 4736243, *5 (N.D.N.Y. 2019) ("moderate limitations in

standing and walking are consistent with light work"); *Gerry v. Berryhill*, 2019 WL 955157, *3 (E.D.N.Y. 2019) ("[c]ourts within this Circuit have held that opinions of similar 'mild to moderate limitations' [for standing, walking, climbing, bending, lifting, carrying, and kneeling] support RFC findings that claimants are capable of 'light work'") (collecting cases); *Heidrich v. Berryhill*, 312 F. Supp. 3d 371, 374 n.2 (W.D.N.Y. 2018) ("postural limitations of moderate or lesser severity are generally considered consistent with the demands of light work").

The ALJ noted that Plaintiff complained of neck and back pain in May and July 2015, and back pain during the October 2016 consultative examination and after a fall in December 2016. Tr. 23. However, there are few medical records showing these complaints, and no abnormal clinical or diagnostic findings, or treatment for a back impairment after December 2016. *Id*. Testimony reflects that Plaintiff did not receive medical treatment for back or neck issues since 2016. Tr. 38, 69. Similarly, there is little evidence demonstrating arm or shoulder difficulties. Plaintiff sought care for shoulder pain in October 2016, but his discomfort and range of motion improved and there is no further evidence of treatment. Tr. 638-40. Plaintiff also testified that he only took aspirin and Tylenol and, when he was "really sore," he used hot and cold compresses. Tr. 65-66, 70. Plaintiff's minimal and conservative treatment was properly considered by the ALJ and provided additional support for the ALJ's decision. Tr. 25. *See Rivera v. Colvin*, No. 1:14-CV-00816 (MAT), 2015 WL 6142860, at *6 (W.D.N.Y. Oct. 19, 2015) (citing *Netter v. Astrue*, 272 F. App'x 54, 56 (2d Cir. 2014)).

The ALJ also considered Plaintiff's extensive activities. Tr. 19-20, 26. As noted above, an ALJ may properly consider a claimant's daily activities as a factor in assessing a claim of disability. *See* 20 C.F.R. § 404.1529(c)(3)(i) (An ALJ may consider the nature of a claimant's daily activities in evaluating the consistency of allegations of disability with the record as a whole.).


"Indeed, the Commissioner's regulations expressly identify 'daily activities' as a factor the ALJ should consider in evaluating the intensity and persistence of a claimant's symptoms." *Ewing*, 2018 WL 6060484, at *5 (citing 20 C.F.R. § 416.929(c)(3)(i)); *see also Poupore*, 566 F.3d at 307. The record shows that Plaintiff went fishing, cooked, cleaned, did laundry, went shopping, attended concerts and festivals, rode a dirt bike, did dishes, and vacuumed. Tr. 412-15, 627, 631, 721. The ALJ properly found that the foregoing activities are inconsistent with the physical and social limitations alleged and provide further support for the ALJ's physical RFC finding.

The record in this case contains ample evidence allowing the ALJ to formulate an RFC finding that accounted for all of Plaintiff's credible functional limitations. As noted previously, Plaintiff has the burden to provide evidence demonstrating disability. *See* 20 C.F.R. § 416.912; *see also Poupore*, 566 F.3d at 305-06. A lack of supporting evidence on a matter for which the claimant bears the burden of proof, particularly when coupled with other inconsistent record evidence, can constitute substantial evidence supporting a denial of benefits. *See Talavera v. Astrue*, 697 F.3d 145, 153 (2d Cir. 2012).

Finally, the Court addresses Plaintiff's challenge to the Appeal's Council's decision not to exhibit the "new" evidence submitted by Plaintiff, consisting of medical records from Horizon dated May 10, 2016 through June 26, 2017 (Tr. 92-186). *See* ECF No. 7-1 at 15-16. The Appeals Council found that the additional evidence submitted by Plaintiff did not show a reasonable probability that it would change the outcome of the decision. Tr. 2. Plaintiff contends that these records were "important because the ALJ held this lack of records against Plaintiff and concluded that he was actually not treating during a time when he was treating for ongoing mental health problems." *See* ECF No. 7-1 at 15.

As an initial matter, the Court finds the new evidence submitted to the Appeals Council after the ALJ's decision is part of the administrative record for judicial review when the Appeals Council denies review of the ALJ's decision. *Perez v. Chater*, 77 F.3d at 45 (holding that new evidence submitted to the Appeals Council following the ALJ's decision becomes part of the administrative record for judicial review when the Appeals Council denies review of the ALJ's decision). The regulations expressly authorize claimants to submit new and material evidence[2] to the Appeals Council without a "good cause" requirement, as long as it relates to the period on or before the ALJ's decision. *Id.* (citing § 404.970(b) and § 416.1470(b)). The Appeals Council evaluates the entire record, including any new and material evidence submitted if it is chronologically relevant, to determine if the ALJ's action, findings, or conclusion is contrary to the weight of the evidence currently of record. *See* 20 C.F.R. § 404.970(b); *Bushey v. Colvin*, 552 F. App'x 97, 98 (2d Cir. 2014).

The Court has reviewed the entire record, including the additional evidence (Tr. 92-286), and finds that the Appeals Council did not err by refusing to review the ALJ's decision in light of the new evidence, as the new evidence presented did not alter the weight of the evidence so dramatically as to render the ALJ's decision erroneous. *See Bushey*, 552 F. App'x at 98. Although the evidence supplied to the Appeals Council consisted of 192 pages, many of the records were duplicative. Furthermore, despite diagnoses of disruptive mood dysregulation disorder, social anxiety disorder, mild cocaine use disorder, mild alcohol use disorder, and attention deficit hyperactivity disorder (Tr. 97, 101, 108, 143, 162), the records reflect mostly benign examination

---

[2] Evidence is "new" when it has not been considered previously in the administrative process. *See Ovitt v. Colvin*, 2014 WL 1806995, *3 (N.D.N.Y. May 7, 2014). New evidence is "material" where it is both relevant to the plaintiff's condition during the relevant time period, and probative. *Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir. 2004). "The concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide claimant's application differently." *Id.*

findings, including appropriate behavior, good eye contact, dysphoric mood, appropriate affect, normal speech range and tone, logical thought processes, normal percepts, good judgment, fair concentration, and intact memory (Tr. 136, 145, 151, 157, 171, 199, 203, 208, 213, 218, 275). Plaintiff was also described as friendly, cooperative, and adequately groomed with normal activity level. Tr. 171-72. This evidence was consistent with the evidence considered by the ALJ and does not undermine his findings. Moreover, the evidence considered by the ALJ was more recent and included, but was not limited to, mental health treatment from March 2018 to June 2018. Tr. 19-20, 23-26, 659-722. Thus, the Appeals Council properly determined that the new evidence did not show a reasonable probability of changing the outcome of the decision. Tr. 2.

As detailed above, substantial evidence in the record supports the ALJ's RFC finding. When "there is substantial evidence to support either position, the determination is one to be made by the fact-finder." *Davila-Marrero v. Apfel*, 4 F. App'x 45, 46 (2d Cir. Feb. 15, 2001) (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)). While Plaintiff may disagree with the ALJ's conclusion, Plaintiff's burden was to show that no reasonable mind could have agreed with the ALJ's conclusions, which he has failed to do. The substantial evidence standard is "a very deferential standard of review – even more so than the 'clearly erroneous' standard," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude* otherwise." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in the original). As the Supreme Court explained in *Biestek v. Berryhill*, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

For all the reasons discussed above, the Court finds that the ALJ properly considered the record as a whole, and his findings are supported by substantial evidence. Accordingly, the Court finds no error.

## **CONCLUSION**

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 7) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 10) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

*/s/ Don D. Bush*
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE